UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| P.R. et al., | : |
| Plaintiffs, | : Civil Case No. 07-5935 (FSH) |
| v. | : **ORDER and OPINION** |
| ROXBURY TOWNSHIP BOARD OF EDUCATION, | : Date: February 6, 2008 |
| Defendant. | : |

**HOCHBERG, District Judge**

This matter comes before the Court upon Plaintiffs' request for an Order to Show Cause compelling Defendant to "fund all of the costs associated with [Plaintiff] K.R.'s placement at the Craig School retroactive from the start of this school year in September 2007 and to have such funding continue until this case is concluded."  Brief of Plaintiffs in Support of Order to Show Cause ("Mot.") at 8.  Plaintiffs seek relief pursuant to the "Pendent Placement Provision," 20 U.S.C. § 1415(j), of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1401, et seq.  The Court has considered the arguments of the parties on the papers pursuant to Fed. R. Civ. P. 78.

I. FACTS

There are few facts relevant to the present motion and they are largely undisputed. Plaintiff K.R. is thirteen and suffers from learning disabilities.  She is currently enrolled in the Craig School, "a private day [school] that serves children with disabilities."  See Mot. at 5.

1

Plaintiff K.R. has been enrolled at the Craig School since the 2004-05 school year.  See Mot. Ex. A (Opinion of ALJ Sandra Ann Robinson), Findings of Fact ¶ 62.  On October 31, 2007 Administrative Law Judge Sandra Ann Robinson issued an opinion in which she determined that "[t]he Roxbury School District delayed classifying K.R. for four years, even though there was sufficient information regarding ADHD, Dyslexia and her other learning disabilities . . . ." Id. ¶ 77.  ALJ Robinson found that Roxbury had "no IEP in place and ready for implementation prior to the commencement of the 2004/2005 school year." Id. ¶ 82.  Nor did Roxbury prepare an IEP prior to the 2005-06 or 2006-07 school years.  See id. ¶¶ 83, 84.  ALJ Robinson concluded that K.R.'s "parents' unilateral placement of K.R. in the Craig School was appropriate, reasonable, made in good faith and in accord with the Individuals with Disabilities Act." Id. ¶ 86.[1]

Plaintiff K.R. remained enrolled in the Craig School for the 2007-08 school year.  On December 20, 2007 Roxbury "conducted an IEP meeting with Plaintiffs and presented them with an IEP for K.R. for the 2007/2008 school year." Brief in Opposition ("Opp.") at 3.  The IEP "called for [K.R.] to leave the Craig School immediately and return to the Roxbury School District in the middle of this school year." See Mot. at 7; see also Opp. at 3.  On January 3, 2008 Plaintiffs filed a new Petition for Due Process against Roxbury challenging this portion of the IEP and "seeking to have K.R. . . . remain at the Craig School . . . ." See Mot. at 7.

---

[1] Defendant Roxbury's Answer (DKT#8) contains counterclaims appealing ALJ Robinson's decision and seeking to vacate and reverse it on the merits.  See Answer, Affirmative Defenses and Counterclaim on Behalf of the Roxbury Township Board of Education ("Answer") at 10-18.  That claim is not before the Court in connection with the instant motion.

Plaintiffs now seek an order "compell[ing Roxbury] to immediately continue making payments directly or via its school district for K.R. to receive special education and related services at the Craig School, including, but not limited to the costs of tuition as well as transportation, retroactive from the start of the 2007-2008 school year . . . ." See Plaintiffs' Proposed Order to Show Cause.  The issue before the Court, therefore, is whether ALJ Robinson's opinion granting Plaintiffs request for reimbursement for the 2004-05, 2005-06, and 2006-07 school years also provides grounds to require Roxbury to pay Plaintiff K.R.'s tuition and costs while the dispute over Roxbury's December 20, 2007 IEP is litigated.

## II. STANDARD FOR INJUNCTIVE RELIEF UNDER IDEA

The Individuals with Disabilities in Education Act ("IDEA") "provides funding to assist states in educating handicapped children living within their borders." See L.M. v. Evesham Twp. Bd. of Ed., 256 F. Supp. 2d 290, 291 (D.N.J. 2003).  In exchange for this funding, participating states must abide by certain procedures mandated by the Act.  "Chief among a participating state's duties is that of creating an Individualized Education Plan ("IEP") for each disabled student within the state's school system." See 20 U.S.C. § 1414(d); see also id. at 292.  Parents who disagree with an IEP may challenge it.  In New Jersey, those challenges are heard by the Office of Administrative Law and adjudicated by administrative law judges.  See N.J. ADMIN. CODE § 6A:14-2.7 ("A due process hearing is an administrative hearing conducted by an administrative law judge.").

A student's placement during the pendency of her challenge to an IEP is governed by a provision in IDEA known as either the "Stay-Put Provision" or "Pendent Placement Provision."

Plaintiffs' request for injunctive relief is based upon this provision. The Pendant Placement Provision requires that

> during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).[2]

Requests for injunctive relief under IDEA's Pendent Placement Provision are subject to a different standard than requests made pursuant to Fed. R. Civ. P. 65.[3] "The Supreme Court has described the language of [the Pendent Placement provision] as 'unequivocal,' in that it states plainly that 'the child shall remain in the then current educational placement.'" See Drinker v. Colonial School Dist., 78 F.3d 859, 864 (3d Cir. 1996) (quoting Honig v. Doe, 484 U.S. 305, 323 (1988)). Consequently, the Pendent Placement Provision "of the IDEA functions, in essence, as an automatic preliminary injunction." Id. (citing Zvi D. V. Ambach, 694 F.2d 904, 906 (2d Cir. 1982)). In Drinker the Third Circuit concluded with regard to injunctive relief that "'[t]he statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration

---

[2] The pending Due Process challenge to the December 20, 2007 IEP is being "conducted pursuant to this section" for purposes of 20 U.S.C. § 1415(j). See 20 U.S.C. § 1415(f)(1)(A) (providing the right to a due process hearing by State educational agency).

[3] Typically, a party seeking preliminary injunctive relief "must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." AMG Nat. Trust Bank v. Ries, No. 06-4337, 2007 WL 2713218, *6 (E.D. Pa. Sept. 13, 2007) (citing Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006)).

of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships.'" Id. (quoting Zvi D., 694 F.2d at 906); see also Lauren W. v. Bd. of Educ. of Radnor Twp. School Dist., No. 02-4775, 2002 WL 32130764, *4 (E.D. Pa. Sept. 12, 2002) (grating preliminary injunctive relief on similar facts).  In this circuit it is clear that "[o]nce a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief."  Drinker, 78 F.3d at 864.

### III. DISCUSSION

Given the standard for injunctive relief discussed in Part II, the question presently before the Court is whether the Craig School is K.R.'s "current educational placement" for purposes of IDEA's "Pendent Placement Provision," 20 U.S.C. § 1415(j).

ALJ Robinson found that "[t]he Craig School meets K.R.'s special educational needs and provides her with meaningful educational benefit in the least restrictive environment."  See Mot. Ex. A. at 45.  The Court finds that ALJ Robinson's October 31, 2007 opinion that Plaintiffs' unilateral placement of K.R. in the Craig School was appropriate served to establish K.R.'s "current educational placement" for purposes of IDEA's Pendent Placement Provision, 20 U.S.C. § 1415(j).  See, e.g., Montgomery Twp. Bd. of Educ. v. S.C., No. 06-398, 2007 WL 275722, *13 (D.N.J. Jan. 29, 2007) ("the ALJ's December 22, 2005 decision that the unilateral placement of D.C. at the Solebury School was appropriate created a new pendent placement for D.C., for which the District is financially responsible").  As another court in this district has concluded

5

> the ALJ's Decision dictates where [plaintiff's] proper pendent placement is during the pendency of this appeal under the stay put provision. The Third Circuit has held that a final administrative decision in favor of the parents' position in an administrative hearing constitutes an 'agreement' between the state and the parents to change the 'then current educational placement' and creates a new pendent placement in accordance with the plain language of the stay put provision.

Chester Twp. Bd. of Educ. v. J.R., No. 00-4169, 2000 WL 33418868, *4 (D.N.J. Oct. 4, 2000) (collecting cases and citing Susquenita School Dist. v. Raelee S., 96 F.3d 78, 86-87 (3d Cir. 1996)).  This approach has been codified in the federal regulations:

> If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of paragraph (a) of this section.

34 C.F.R. § 300.518(d).  The New Jersey regulations similarly state that "[i]f the decision of the administrative law judge agrees with the student's parents that a change of placement is appropriate, that placement shall be treated as an agreement between the district board of education and the parents for the remainder of any court proceedings." N.J. ADMIN. CODE. § 6A:14-2.7(u)1.  Because K.R.'s parents' decision to unilaterally move K.R. to the Craig School was vindicated by ALJ Robinson, the Craig School has become K.R.'s "current educational placement" for purposes of the proceedings arising from the December 20, 2007 IEP.[4]

---

[4] Defendant does not fully address the Pendent Placement Provision and instead focuses on arguments about exhaustion.  Defendant argues that "the only issues presented to Judge Robinson were the appropriateness of K.R.'s unilateral placement at the Craig School for school years 2004-07 and that, because the propriety of K.R.'s placement at the Craig School for the 2007-08 school year was not before ALJ Robinson, Plaintiffs must first raise that issue in an administrative proceeding.
   Defendant's position would render the Pendent Placement Provision meaningless.

Having established K.R.'s current educational placement, the only remaining question is Roxbury's liability for costs associated with K.R.'s placement at the Craig School. It is settled law in the Third Circuit that Roxbury is liable for costs associated with K.R.'s current educational placement beginning with the date of the "agreement" established by ALJ Robinson's October 31, 2007 decision and lasting for the duration of the proceedings arising from the December 20, 2007 IEP. As the Third Circuit has noted, "[w]hile parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position." Susquenita School Dist., 96 F.3d at 86-87; see also Lauren W., 2002 WL 32130764 at *4 ("As to the identification of who should pay for [plaintiff's] 'current educational

---

K.R.'s "current educational placement" was established by ALJ Robinson's decision. That decision constitutes an "agreement between the State and the parents" unless and until it is overruled. Thus, under the Pendent Placement Provision, K.R. may remain in that placement pending the outcome of the proceedings arising from the December 20, 2007 IEP. To conclude otherwise would give Roxbury unilateral power to undo K.R.'s "current educational placement," which is proscribed by the Pendent Placement Provision. See Honig v. Doe, 484 U.S. 305, 323 (1988) ("Congress very much meant to strip schools of the unilateral authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school."). The Pendent Placement Provision preserves the status quo as established by the ALJ's decision until Plaintiffs' challenge to the December 20, 2007 IEP is resolved. Traditional concepts of exhaustion are rendered inapplicable by the Pendent Placement Provision once there has been a pertinent prior ALJ ruling.

Defendant's "Point II" contests ALJ Robinson's decision on the merits. Defendant has appealed ALJ Robinson's decision in its Answer, and such issues will be considered in due course when the case reaches the merits stage. At this time, however, it is important to note that IDEA's Pendent Placement Provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Drinker, 78 F.3d at 864 (emphasis added). Thus, regardless of whether ALJ Robinson's decision is correct, it establishes K.R.'s "current educational placement," and that is the only issue presently before the Court.

7

placement,' it is well established in this Circuit that 'once there is state agreement with respect to pendent placement, a fortiori, financial responsibility on the part of the local school district follows.'").  "The purpose of the Act, which is to ensure that every child receive a 'free and appropriate education' is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education."[5] Susquenita School Dist., 96 F.3d at 86-87.

Because Plaintiff K.R. must remain in her current educational placement, the school board is liable for the costs associated with that continued placement.  In adopting this approach, the Third Circuit was "mindful of the financial burden which will, in some instances, be borne by local school districts."  Id. at 87.  In response to this concern, the Third Circuit quoted the Supreme Court's decision in Florence County School District Four v. Carter:

> "There is no doubt that Congress has imposed a significant financial burden on the States and school districts that participate in IDEA. Yet public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice. This is IDEA's mandate, and school officials who conform to it need not worry about reimbursement claims."

Id. at 87 (quoting 510 U.S. 7, 15 (1993)).

---

[5] Plaintiff requests tuition and costs from the beginning of the 2007-08 school year, see Mot. at 8, while Defendant argues in the alternative in its "Point III" that it is liable only for costs accruing after Plaintiffs filed their January 3, 2008 Due Process Petition challenging the IEP, see Opp. at 10.  As Susquenita School District and other cases make clear, however, a school district's liability for a student's placement begins at the time of an administrative decision establishing that placement.  See, e.g., 96 F.3d at 86-87.  In the case at bar, K.R.'s current educational placement was established by ALJ Robinson's decision on October 31, 2007.

IV. CONCLUSION

The Court finds that, pursuant to ALJ Robinson's October 31, 2007 decision, K.R.'s "current educational placement" is in the Craig School. IDEA's Pendent Placement Provision entitles K.R. to remain in that placement pending the outcome of her challenge to Roxbury's December 20, 2007 IEP. When the Pendent Placement Provision entitles a student to remain in her "current educational placement," the school board shall be liable for the associated costs. The Court will grant Plaintiffs' request that Defendant Roxbury be ordered to pay for "K.R. to receive special education and related services at the Craig School, including, but not limited to the costs of tuition as well as transportation"[6] retroactive to October 31, 2007.

V. ORDER

**ACCORDINGLY** it is on this 6th day of February, 2008

**ORDERED** that Plaintiffs' request for preliminary injunctive relief compelling Roxbury to pay for "K.R. to receive special education and related services at the Craig School, including, but not limited to the costs of tuition as well as transportation" is **GRANTED** retroactive to October 31, 2007 and lasting for the duration of the proceedings arising from the December 20, 2007 IEP, "unless the State or local educational agency and the parents otherwise agree," 20 U.S.C. § 1415(j).

/s/ Faith S. Hochberg

**HON. FAITH S. HOCHBERG, U.S.D.J.**

---

[6] Defendants do not challenge Plaintiffs' "including but not limited to" language, or Plaintiffs' request for transportation costs.